## Case No. 5,849.

### GRUBB v. BAYARD.

[2 Wall. Jr. 81.] [1]

Circuit Court, E. D. Pennsylvania.    April Term, 1851.

COVENANT — LICENSE, OR PRIVILEGE AS DISTINGUISHED FROM GRANT—INDIVISIBILITY, EXTENT, AND EXCLUSIVENESS OF PRIVILEGE OR GRANT.

1. Where one owning a large tract of land, grants, bargains and sells part of it, and for himself, his heirs, executors, and administrators, covenants, promises, grants, and agrees, with the grantee, his heirs and assigns, that he and they may dig, take and carry away all iron ore to be found within the ungranted part of the tract, paying so much a ton, this is not a grant of the ore, but of a right or privilege to dig, take and carry away ore to be found; and no property accrues in the ore until the privilege has been exercised.

[Cited in Caldwell v. Fulton, 31 Pa. St. 482; Funk v. Haldeman, 53 Pa. St. 234; Carnahan v. Brown, 60 Pa. St. 25; Stockbridge Iron Co. v. Hudson Iron Co., 107 Mass. 308; Massot v. Moses, 3 S. C. 168; Wheeler v. West, 71 Cal. 126, 11 Pac. 873; Hartford Min. Co. v. Cambria Min. Co., 93 Mich. 93, 53 N. W. 5; Silsby v. Trotter, 29 N. J. Eq. 233.]

2. The right is without stint, but is not exclusive of the owner of the soil.

[Cited in Johnstown Iron Co. v. Cambria Iron Co., 32 Pa. St. 246.]

3. It is indivisible, and an assignee of it, unless clothed with the whole right, has nothing, and can support no suit as against the owner of the soil.

David Foree, by deed of indenture made in 1769, reciting his title to 302 acres of land, grants, bargains and sells 20 acres of it which are described, to William Bennet; leaving 282 acres still his own property, in regard to which the indenture contained the following covenant: "And the aforesaid David, for himself, his heirs, executors and administrators, doth covenant, promise, grant and agree to and with the aforesaid William, his heirs and assigns, that he, the said William, his heirs and assigns, shall and may, from time to time, and all time hereafter,

dig, take and carry away all iron ore to be found within the bounds of the said David's tract of land containing 282 acres, provided he, the said William, his heirs and assigns, pay unto the said David, his heirs or assigns, the sum of six pence, Pennsylvania currency, per ton, for every ton taken from the premises of 282 acres aforesaid." The deed was a technically and well drawn instrument containing all the formal or orderly parts of a deed enumerated by Lord Coke (Co. Litt. 6a); and the covenant above quoted followed after the habendum and tenendum. Bennet being dead, the plaintiff purchased the interests of ninety-four of ninety-nine of his representatives, and the defendant having become owner of the 282 acres reserved, and having taken away many thousand tons of iron ore, this action on the case was brought by the plaintiff against him. It was admitted that the ore taken by the defendant was found, mined and dug by himself or his servants; and it appeared that neither Bennet nor his heirs, nor the plaintiff had ever had actual possession, use, occupation or enjoyment of the right granted by the deed of 1769, nor been in any way hindered in the enjoyment of it otherwise than by the defendant's taking ore in the manner just stated. The declaration which contained numerous counts, founded the plaintiff's right to recover on his being "lawfully possessed of a certain right and privilege to dig, take, and carry away iron ore to be found within the bounds of a certain tract of land to the exclusion of the defendant," or as being "lawfully possessed of a certain exclusive right or several privilege to dig, take and carry away iron ore to be found within the bounds of a certain tract of land;" and charged the defendant with unjustly hindering and preventing the plaintiff from digging, taking away the iron ore to be found within the bounds of the tract, and also wrongfully taking large quantities of ore from said tract, &c. All the counts asserted in some form a right which was several or exclusive in the plaintiff: none of them representing him as a tenant in common with others: and none of them alleging a "surcharge" by defendant. The plea was "Not guilty": there being no plea of any sort in abatement for the nonjoinder of the remaining representatives of Bennet, whose rights the plaintiff had not acquired. Upon these facts, a verdict having been given for the defendant, the following questions came before the court on a motion for a new trial:

I. What was the nature of the right granted by Foree to Bennet?

II. Was this right—whatever it was—exclusive? so making it unlawful for the owner of the land to dig in it for ore, as well as the assignee of Bennet.

III. Was this right divisible or susceptible of apportionment; so that the plaintiff having but 94-99ths of it could maintain this action?

1 [Reported by John William Wallace, Esq.]

Thomas Sergeant and Mr. Mallery, for plaintiff.

Dallas and Penrose, for defendant.

In Favour of a New Trial. The meaning and effect of the words quoted from the deed, have in some degree been settled by the supreme court of Pennsylvania in a case (Grub v. Guilford, 4 Watts, 223, 246) where this same deed was under consideration, although the point here raised was not the one in that case. Judge Rogers there speaking of this deed, said: "It is a grant of twenty acres of land in fee simple, and also a grant of an incorporeal hereditament, for a distinct and different consideration in the remaining part of the tract of two hundred and eighty-two acres. The right to raise ore is an incorporeal hereditament, ·granted for a valuable consideration, and is not, as has been contended, a license revocable at the will of the parties." The grant makes an estate in the land.

Then the grant is exclusive. Bennet, his heirs and assigns, may "dig, take and carry away all iron to be found" within the two hundred and eighty-two acres. These words are essentially different from those in Lord Mountjoy's Case which will be relied on by the other side. How can one man dig, take and carry away "all iron,"—not which he may find,—but which is "to be found" within a certain tract, consistently with the same right in another man to dig, take and carry all or any of it away? If one man grants to another a right to put in his cattle on a certain field to depasture the whole field and eat up all the grass on it, could he himself afterward depasture the field with his cattle? and if not enough for the cattle of both parties, bring an action against the other for surcharging the common?

IV. The grant is susceptible of apportionment, or if not, whatever objection can be raised from the want of the 5-99ths not acquired, can be raised only by plea in abatement. The evidence shows that the plaintiff has 94-99ths: he holds in common with those who hold the remaining 5-99ths: and tenants in common may sue severally. Any objection to their doing so must be taken by abatement.

Against a New Trial. The declaration asserts an exclusive right in an entire thing. The evidence shows a right to 94-99ths only, of the thing. But it is a thing which is not divisible. If it were divisible, the same party might be harassed by infinite actions. It is not a question of pleading or parties, but one of title. The title laid varies from that proved. No title is proved.

II. The language is that of a personal covenant, not of a grant at all. It does not bind the grantor's heirs and assigns, but his heirs, executors and administrators. It is not in the granting part of the deed; but in the place where, as a covenant, it ought to be.

The grant was complete: the habendum and tenendum had been declared, and this part follows both. It is a license to go on the soil, to dig and take away all the ore he can find, and it is nothing more. In Doe v. Wood, 2 Barn. & Ald. 724, 74, in the K. B., 1819, the owner of land granted for twenty-one years to A. and "his partners, fellow-adventurers, executors, administrators and assigns, free liberty, license, power and authority to dig, work, mine and search for tin, tin-ore, &c., and all other metals and minerals whatsoever," within certain limits: and the same "there found" to raise and dispose of, subject to certain reservations; and within the limits to make such adits, shafts, &c., and to erect such sheds, engines, and buildings as they should from time to time think necessary or convenient, together with the use of · all such water and water-courses within the limits as were not already granted to others, &c. Excepting to the grantor, his heirs and assigns free liberty of driving any new adit from any adit driven or to be driven "within the lands thereby granted," and of entering into and driving such new adits through the same into any other lands of the grantor. The indenture contained a covenant for payment of an eighth share of the ore, and a proviso that on failure the grantor, his heirs and assigns might re-enter "upon the lands," to "have again, repossess and enjoy them." On ejectment brought by A., the grantee, the question arose whether the deed operated as a license only, or as an actual demise of the metals, and conveyed a legal estate in them during the term as a chattel real. Chief Justice Abbott relied much on the fact, that the deed, though inaccurate, was a regular, formal ˙ deed. The granting part, whose office it is "to comprehend the certainty of the tenements to be conveyed," did not purpose to lease the lands, and though a subsequent part of the instrument spoke of the lands as granted, yet these being among "covenants" or "clauses," the expressions were to be attributed either "to want of care and caution in the preparation of the deed," or if not, could "have no further effect than to show that the grantor who used them, supposed that the soil or minerals and not a mere liberty or privilege passed by his deed." Muskett v. Hill, 5 Bing. N. C. 694, 708, 712, decided in the C. P. after this case, will be cited to destroy its value; but in that case there was "an express proviso in the original grant, that the licenses and authorities should be assignable by deed;" a fact which the court speaks of as "not unworthy of observation."

III. The right in the grantee, whether license, privilege or grant, is not exclusive of the owner of the soil. Being but a right to all the ore the grantee can find, dig and take away, it is consistent with the owner's right to such ore as he can find, dig and take away. It is like a common sans nombre. There is no allegation or proof, that the de-

fendant has surcharged by digging more than he ought. Indeed the right laid would be inconsistent with such allegation or proof. The declaration lays throughout an exclusive or several right.

IV. But this whole case has been settled by the English courts in Lord Mountjoy's Case, so long ago as the reign of Elizabeth. It is in all particulars our case, and being so, and not to be departed from without overturning what has been established law for near three centuries, we press it as conclusive. The case is well reported by Anderson, C. J. (And. 307), of the common pleas, one of the judges who decided it, and who quotes the words of the deed. It is reported also by Leonard (4 Leon. 147), and by Lord Coke (Co. Litt. 164b), who was Lord Mountjoy's counsel; and in the book called Godbolt's Reports (Godb. 17, 18), there is a report of it by some one, who seems to have been present at the decision. It is also reported by Moore (Moore, 174), as Coke stated it in the exchequer soon after the decision. The case therefore is well vouched. It was in the 25th of Elizabeth, "the Augustan age of our old common law learning;" and it was thoroughly considered. It first arose before the privy council, and was referred by them for a certificate of opinion to Chief Justice Anderson, and Judge (afterwards Chief Baron) Peryam, who returned a certificate of opinion in writing, which we have in Anderson. They say that they "divers times conferred thereof not only between ourselves, but with some other justices," who were Chief Justice Wray, of the K. B., Chief Baron Manwood, "et autres," including, as appears from Godbolt, the lord chancellor. On certain points referred by the privy council, they and the "others that conferred," were "very doubtful and cannot agree." On others they were of one opinion. Lord Coke thus reports the decision. "The Lord Mountjoy, seised of the mannor of Canford in fee, did by deed indented and inrolled, bargaine and sell the same to Browne in fee, in which indenture this clause was contained. Provided always, and the said Browne did covenant and grant to and with the said Lord Mountjoy, his heires and assignes, that the Lord Mountjoy, his heires and assignes, might dig for ore in the lands (which were great wasts) parcell of the said mannor, and to dig turfe also for the making of allome. And in this case three poynts were resolved by all the judges. First, that this did amount to a grant of an interest and inheritance to the Lord Mountjoy, to digge, &c. Secondly, that notwithstanding this grant Browne, his heires and assignes might dig also, and like to the case of common sauns nombre. Thirdly, that the Lord Mountjoy might assigne his whole interest to one, two, or more; but then, if there be two or more, they could make no division of it, but work together with one stocke; neither could the Lord Mountjoy, &c., assigne his interest in

any part of the wast to one or more, for that might worke a prejudice and a surcharge to the tenant of the land." Anderson, it is true, takes no notice in his certificate of the point of indivisibility, nor does he state it as a question referred from the council. But Godbolt and Leonard each confirm Lord Coke, by stating expressly that the court held, that the Lord Mountjoy could not divide the interest, viz., "to grant to one to dig within a parcel of the said waste." Anderson gives the words of the deed which much resembles ours. Lord Mountjoy "did license and authorize Richard Leycole for and during the term of 31 years next, to search, open, dig, cast up and work for all manner of mines, minerals, mettals, liquors and commodities whatsoever in any of the mines, minerals and possessions whatsoever, of the said mannor," and the same to convert to his use during the said term, yielding therefor yearly to the Lord Mountjoy the full moiety or one half, &c.

Grubb v. Guilford, cited on the other side, is no adjudication on the point before us. That case decided that the right in the 282 acres is not appurtenant to the 20 acres conveyed, so as to pass by a sheriff's sale of the latter.

Reply. Muskett v. Hill destroys Doe v. Wood. In the former case the court say, that the indenture in Doe v. Wood does not differ substantially from the one before them. They yet declare that the latter operates not merely as a license, but as a grant; a doctrine in which they show that older cases confirm them. Thomas v. Sorrell, Vaughan, 351; Palmer's Case, 4 Rep. [Coke] 75; Cro. Eliz. 819, under the name of Basset v. Maynard; Grantham v. Hawley, Hob. 132. The indivisibility of the grant is supposed to be decided by Lord Mountjoy's Case. Anderson is the only reporter, who had, certainly, any personal knowledge of that case. He reports it particularly, but makes no mention of the point of indivisibility. His report shows that it did not arise at all. Leonard's Reports and the book called Godbolt were both published by the same person, one Hughes, and the reports of this case are probably copied one from the other; or probably, as appears in Godbolt, both from Coke himself, who was counsel of Lord Mountjoy. Coke does not report the case at all. He merely states it in commenting on Littleton, and many years after the judgment was given. In respect to the exclusiveness of the grant, the language of the deed in Lord Mountjoy's Case is essentially different from that here. "To dig, take and carry away all iron ore to be found," is a different thing from to "search, open, dig, cast up and work for all manner of mines, &c., and the same to convert to his own use," &c. The first gives all ore of a certain kind: the second as much as he can find of all manner of ore.

Before GRIER, Circuit Justice, and KANE, District Judge.

## (May 13, 1851.)

KANE, District Judge. Is there anything in the deed which asserts, that Foree intended to do more than enter into the ordinary covenant that, so long as there was iron ore on the 282 acres, Bennet and his assigns might work it if they chose, on paying a certain price per ton? I find the legal and apt phraseology in which a lawyer might embody such a covenant, and nothing more. The indenture in the case of Doe v. Wood, quoted at the bar, seems to me to resemble the grant of an exclusive incorporeal hereditament, much more than the covenant before us. It was contended in that case, that it should be regarded as a lease, and there was much in the words that gave countenance to such an interpretation. Thus it was argued, that the "full and free liberty to dig all metals and minerals, throughout the demised lands," was tantamount to a sole grant of all the minerals, since two individuals could not both have full liberty so to dig; that the exclusive right which was engaged for to the adits or shafts, amounted to an exclusive right to the ore, for the ore could not be got out except by the adits; that the right to erect sheds, to make water-courses, and use all the water on the land, showed that an interest passed in the soil; that the limited powers which were reserved to the lessor pending the term of passing through the mines for the purpose of working other mines adjacent; and still more the right of re-entry, in case of breach, which was specially set out in the deed,—all assume that while the term continued the grantee had an estate; and that this was supported by the language in many parts of the instrument, which spoke of the "land hereby granted," the "ground and premises hereby granted," the "land or ground hereby granted," &c. The court was of opinion that the indenture amounted only to a license to dig and work; and Chief Justice Abbott, while he admitted that formal words of demise were not necessary to pass such an interest in the soil as was claimed, added that, whatever doubts the expressions referred to might cast, they were not sufficient to vary the construction of the granting words, which of themselves were not of doubtful import, and that they could not operate to extend the grant, by converting the things granted from chattels personal, when gotten into a chattel real previously to their being gotten. 2 Barn. & Ald. 740, 741. The case in Bingham, which the plaintiff's counsel refer to as destroying the value of Doe v. Wood, was a case of mutual and well-guarded covenants, which not only authorized the licensees to raise ore, paying therefor a certain toll, but also bound them to do so with a prescribed degree of energy and effect under penalty of a forfeiture —a circumstance of much importance in determining the intent of the parties; besides which, they must have contemplated the grant of an assignable interest, for they had covenanted that the license might be assigned by deed.

II. But regarding Foree's covenant as an operative grant, what is the right that the plaintiff could claim under it? He says that it is not a right of common, but a right that excludes the owner of the soil. I think he is wrong in this. I should rather call it a right of common, even though it excluded the owner of the soil; that is to say so far as the policy of the law permits him to be excluded. Common is a right or privilege, says Sir Matthew Hale (Abr. tit. "Common"), which one or more persons claim to take and use in the natural produce of another man's land. It may therefore be exclusive, or rather sole; for the grant, or the prescription or custom, may be in favour of one man only. But it can never exclude the lord of the soil from his reasonable participation. In Procter v. Mallorie, 1 Rolle, Abr. 365, Coke, J., says—"Notwithstanding a grant of common sans nombre the lord may common with the grantee; and moreover the grantee must use the common with a reasonable number." And the reporter adds—"This was agreed to by the lord chancellor." And in two cases in the Year Books, which I cite from Rolle's Abridgment (title A, "Common," pl. 2, and title 1, "Common sans Nombre," pl. 5), the same position is affirmed. The owner of the soil, it is there said, hath such an interest in the soil, that though he grant a right of common sans nombre, yet the grantee cannot use the common with so many cattle, that the owner cannot have common enough for his own cattle. And Coke adds (Co. Litt. 122a), that "a custom or prescription totally to exclude the owner of the soil is unreasonable, and void as against law; because it was implied in the first grant that the owner of the soil should have common also." One of the points agreed in the Case of Lord Mountjoy, was based upon this doctrine; where it is said, that notwithstanding the grant of the right to dig, &c., to the Lord Mountjoy, the grantor, his heirs and assigns, owners of the soil, might dig there also; "like to the case of common sans nombre." And the same is relied upon as undoubted law by Lord Ellenborough, in Chetham v. Williamson, 4 East, 469. In truth the only exception to its application that I have found contended for in the books, is in the case of a free fishery, mooted in a case in 2 Salk. 637 (Smith v. Kemp), and discussed in Mr. Hargrave's note on Co. Litt. 122.

III. But would such a hereditament as the plaintiff claims to have, be susceptible of apportionment? He claims that it is a right in gross; I have given my reason already for regarding it as a right in common. A right of common in gross sans nombre. Can such a right be apportioned?

The leading case upon this question, is that of Lord Mountjoy, stated in the argument of the counsel, and just now referred to by

me. This case throughout, bears on the question before us. It denies that the grantee of a right to mine, can either assign his right to a third person for a part of the tract, or so assign an undivided interest in his right for the whole tract, as to confer on the assignee a several right to mine; and by the reason which it gives for a continuing right to mine, in the grantor, notwithstanding his grant to another, it shows that the case would not differ, whether the original mining grant were or were not in its terms exclusive, for it refers to the analogy of a common sans nombre, in which, as we have seen, the owner of the soil cannot be excluded, but may complain that he is surcharged, even against his own grantee, of common unlimited. In other words, the case decides that a right in gross to mine, whether in terms exclusive or not, is essentially integral, and not susceptible of apportionment. And this may be the meaning of Treby, C. J., where he says (Weekley v. Wildman, 1 Ld. Raym. 407), "Although a common sans nombre may be granted at this day, yet such grantee cannot grant it over." And a similar explanation may perhaps reconcile the opinion expressed in Shep. Touch. p. 238, to the same effect with the remark of Treby, and the case in the Year Book, 18 Edw. IV. 84, which the annotators cite as in opposition to their text. The incorporeal hereditament may well be assignable, and yet not apportionable. The assignment may have legal effect, but if it be to more than one, the assignees take together an indivisible entirety. Such I apprehend to be clearly the law laid down in Lord Mountjoy's Case, and I have no reason to suppose that the law of England is different at this day. To the same effect is Layman v. Abeel, in New York (16 Johns. 30), the points decided in which are well condensed in the syllabus. "The grantee in fee of a right of common in gross and without number, may alien it, and it descends to his heirs, but it cannot be aliened in such a way as to give the entire right to several persons, to be enjoyed by each separately; and where it descends to several persons, as tenants, in common, or parceners, it seems that it cannot be divided between them, but that there must be a joint enjoyment of it; nor can one of the tenants alone convey a right in the common, but they may jointly alien their rights." The same principle is carried out in Van Rensselaer v. Radcliff, 10 Wend. 639, where Chief Justice Savage decides that "common of estovers, if divided by the act of the party, is extinguished; if by descent cast must be exercised by the heirs jointly." The extinguishment of the right by an assignment of it in part is, I suppose, deduced from this consideration, that the right being essentially an entire one, and the whole neither passing to the assignee nor continuing in the assignor, it remains no longer in any one. And all this is in harmony with the ancient law of qualified and incorporeal hereditaments. Thus a condition may not be apportioned; but is determined by license as to part. Dumpor's Case, 4 Rep. [Coke] 119b; 1 Smith, Lead. Cas. 85. And a right of way in gross doth not pass to several by assignment; and though a rent charge may be apportioned, as by an apportionment of the soil, in respect to which it is reserved, or so far at least, that parceners may take it (Co. Litt. 164a, 165b), or a rent service, for it is to the advantage of the lord (Doe v. Meyler, 2 Maule & S. 276), as parceners may also take a corody certain, or an advowson, or a right of mill certain; yet this is only where the division of the inheritance would not prejudice another, for in the case of estovers or corody uncertain, or piscary or turbary sans nombre, there can be no apportionment; and the reason why parceners take in such case at all, seems to be, that they make but one heir in law, and therefore they must join in actions real, and if disseised, in one assize. Co. Litt. 164a. As they must also join, (and so must tenants in common, qua parceners under our American statutes of descent,) when damages are to be recovered for a tort done to their lands. Daniels v. Daniels, 7 Mass. 137. I take, then, the law to be, that if an incorporeal hereditament passed by the words of Foree's covenant to Bennet, it was one not susceptible of apportionment; that it passed by his death to his heirs jointly, and can only be enjoyed by them jointly, and as one tenant; that the assignees of the heirs stand in no better plight than the heirs themselves, and can have no separate enjoyment of the mining right, and that neither heirs nor assigns, nor both, can claim to exclude the heirs and assigns of Foree, owners of the soil, from a right to dig ore in common with them.

3. There remains the third inquiry, Can this suit be maintained, on proof of an apportioned interest, the defendant not having pleaded an abatement? The plaintiff claims not as a tenant in common with others, but as the exclusive owner of a several right; and he cannot now turn round, and asserting a tenancy in common instead, exclude the defence from showing that he does not legally represent the interests which on this amended view of his title should have united in the institution of the suit. The right which he asserted was an exclusive one in himself, according to some of the counts, and one that excluded the defendant according to the others. And in one form or the other, it was the basis of his suit. The case fails unless his proofs support this exclusiveness of claim.

(May 13, 1851.)

GRIER, Circuit Justice. Assuming, for the argument, the plaintiff to be the assignee of the whole right which was vested in Bennet, and that it is a grant upon sufficient consideration, let us inquire, what is granted? Not the iron ore. This the plaintiff properly admits in his declaration, where he defines his interest under the deed, as a "right and privilege to dig, take, and carry away iron ore to

be found" in the land of defendant. If it had been a grant of an absolute property in all the iron ore in the tract, the deed would have been insufficient to confer title without livery of seisin, and the statute of limitations a bar to the claim. A right or privilege to dig and carry ore from the land of another, is an incorporeal hereditament,—a right to be exercised on the land of another. It is a license irrevocable, when granted on sufficient consideration. It may be demised for years or granted in fee: it is assignable. The grantee or assignee of such a license, right or privilege to be exercised in the land of another, has no such title to the ore that he can support trover against the owner of the land for ore or coal raised by him. Chetham v. Williamson, 4 East, 476. On this subject I may adopt the words of Lord Tenterden in one of the cases relating to mines, quoted at the bar (Doe v. Wood, 2 Barn. & Ald. 724, 738): "This indenture in its granting part does not purport to demise the land or the metals or the minerals therein comprised. The usual technical words of demising such matters are well known and usually adopted in a formal deed when the intent is to demise the land or metals or minerals. But the purport of the granting part of this indenture is to grant for the term therein mentioned, (here in fee,) a liberty, license, power, and authority to dig, work, mine and search for metals, minerals, in and throughout the lands described, and to dispose of the ore, &c. that should be found within the term, to the use of the grantee, &c. Instead, therefore, of parting with or granting all the ore that was then existing on the land, its words import a grant of such parts thereof as should, upon the license or power given to search and get, be found within the described limits; which is nothing more than a grant of a license to search and get, (irrevocable, indeed, on account of its carrying an interest) with a grant of such of the ore only as should be found and got, the grantor parting with no estate or interest in the rest."

2. Is the right granted, one that is exclusive of the owner of the soil? Much stress has been laid upon the word "all" in this grant, as having the effect of making it exclusive. But so important a restriction cannot be deduced from so equivocal an expression. The deed has been drawn by a very able conveyancer. He seems to have had Lord Mountjoy's Case in his mind at the time. He employs none of the apt and well known terms or phraseology to indicate an intention of giving an exclusive right as against the grantor himself. The grant of a right to dig, take and carry away "all" iron ore to be found within the bounds, &c. shows the extent of the license, but not its exclusiveness. The grantee may dig, take, &c. of any or all the ore he can find on the land, but he has no exclusive right in any of it till he finds it and digs it. It is a right without stint as to quantity, and Lord Mountjoy's Case likens

it to the grant of a right of common sans nombre which does not exclude the owner. This is a point decided in Lord Mountjoy's Case as reported by Coke, Leonard and Godbolt.

3. Did the evidences given by the plaintiff support the allegation that he was possessed of the exclusive right to dig, &c., assuming that the deed in question conferred an exclusive right on Bennet to dig, take, and carry away the iron ore on this tract of land? The right, license or liberty granted to Bennet is in its nature one and indivisible. Unless the plaintiff is clothed with the whole he has nothing. As for other things indivisible, it may be held by one or more as joint tenants. But they hold per my et per tout, (not as Blackstone has erroneously interpreted it, "by the half or moiety and by all,") but "by nothing and by all" (7 Man. & S. 452, in note), or, in the language of Bracton, "Quilibet totum habet et nihil habet, scilicet totum in communi et nihil separatim per se." As a right to be exercised in the land of another it is an indivisible unit. Whether the plaintiff has 1-99th or 94-99ths makes no difference. If he has not the whole he has nothing. It is a question of title and not of pleading. The Case of Lord Mountjoy is conclusive on this point also. New trial refused.

On a subsequent day the following opinion totius curiae signed by both judges, was pronounced by

### (Sept. 8, 1851.)

GRIER. Circuit Justice. As the opinions heretofore delivered by the respective members of this court on the questions argued on the motion for a new trial may possibly be construed as arriving at the same result by a different course of reasoning; and may be considered as deciding the present motion only, without any definite opinion of the whole court, as to the nature or construction of the covenant in the deed of 1769, we state the following propositions as ruled by the whole court, in which we agree; without repeating the authorities or all the reasons which might be urged in support of them; and for which we refer to our several opinions as delivered.

1st. For the purposes of the present decision we assume that the covenant in question contains a grant in fee to Bennet and his heirs for a sufficient consideration to be paid.

2nd. We decide, that the thing granted is not the iron ore contained in the land of defendant; but an incorporeal hereditament, a right or license or liberty, well described in the plaintiff's declaration as "a right and privilege to dig, take and carry away" all or any iron ore to be found in the land of defendant. It is a license irrevocable, which may be demised for a term of years, or assigned in fee.

3rd. That until the grantee or his assigns exercised this privilege by digging, taking,

&c., iron ore found in the land, they had no property in the ore that would support an action of trover for the same.

4th. That the effect of the word "all" in this grant is not to give an exclusive right as against the grantor. It describes the extent to which the license may be exercised, not its exclusiveness. It is a grant of a right to take ore without stint, and is aptly compared to a right of common in gross sans nombre, which does not exclude the lord or owner of the land out of which it is granted.

5th. That such a right is indivisible, and unless the plaintiff as assignee is clothed with the whole, he has nothing, and cannot support this suit as against the owner of the land.

6th. And lastly: That the Case of Lord Mountjoy as reported by several authoritative reporters, and among them, by Lord Coke in his Commentary, is directly in point on both parts of the case, and rules it. Its authority has never been questioned; and the application of its doctrines to this case results in a conclusion which accords with our reason, and our sense of justice.