Decided at PENDLETON, July 20, 1895; rehearing denied.

## STINSON *v.* HARDY.

[41 Pac. 116.]

LIENS—MINING LEASE—LAWS, 1891, PAGE 76.—The holder of an irrevocable exclusive license to work a mine, who by his expenditures has acquired an interest entitling him to possession against all persons, is a lessee within the spirit and meaning of the act of February twentieth, eighteen hundred and ninety-one, section 1, ( Laws, 1891, page 76,) giving a lien for work and labor in developing any mine, except as against the owner of a mine worked by a lessee.

APPEAL from Baker: MORTON D. CLIFFORD, Judge.

This is a suit to foreclose three several miners' liens claimed for work and labor done and performed at the instance of the defendant O. B. Hardy, who was operating certain mining properties under the following agreement with the owners thereof, viz.:—

"*This indenture,* made and entered into this twelfth day of October, eighteen hundred and ninety-three, by and between C. M. Berry, C. M. Collier, L. M. Barnett, and J. M. Barnett, his wife, and D. L. Choate, as lessors, of Baker County, Oregon, the parties hereto of the first part and O. B. Hardy, lessee, the party of the second part, and of the same place, *witnesseth,*—That whereas the said lessors, the parties of the first part, have by their joint deed of conveyance, under their hands and seals, and of even date herewith, conveyed to the said lessee all their rights, title, and interest in and to those two certain quartz mines situated in Baker County, State of Oregon, (here follows a description of the mines,) and therein covenanting that said mining claims had been recorded and worked as required by law to the extent of one hundred dollars' worth on each of said claims for each year since its location, and have been continuously worked theretofore by themselves, their predecessors in interest

for the purpose of holding the same, and making the same valid as locations; and whereas said deed so executed and acknowledged is delivered as an escrow to the First National Bank of Baker City, Baker County, State of Oregon, to be kept upon condition of the full and complete payment by the said party of the second part herein, his heirs or assigns, of the sum of twenty thousand dollars ($20,000) to the said first parties, their order, heirs, or assigns, on or before the first day of January, eighteen hundred and ninety-five, and upon said condition to be delivered to the said second party herein, his heirs or assigns, as the deed of the said first parties herein of, in, and to the premises therein and herein described; and whereas said escrow so delivered upon condition that said mines be leased by the said first parties herein to the said second party herein until the fulfillment of or breach of the conditions of said escrow.

*Now, therefore,* in order to carry out the terms of said escrow, the said parties of the first part do hereby deliver unto the possession of the said second party· the above named quartz mines, with their appurtenances, with the full right, power, and privilege and authority, and without let or hindrance, except as herein expressed, to extract the ore therefrom, and to work the same by whatever machinery or appliances the said second party may employ for the purpose of preparing for and working the same and taking the ore therefrom, crushing the same, extracting the gold therefrom, and otherwise using and operating the said mine in a proper and miner-like manner, doing no wilful or unnecessary injury thereto, and in developing the same for the period from this continually next ensuing until the first day of January, eighteen hundred and ninety-five; *provided, nevertheless,* that the said second party, the lessee herein named, shall at all proper times permit either one of said lessors whom a

27 OR.—75.

majority of them may choose, at all proper times during the continuance of this lease, to enter upon said mine and inspect the manner in which the same is being managed and worked by said lessee, and inspect and be informed for the benefit of said lessors of the character and amount of the yield of the ore extracted from said mine; *and provided further,* that said ore taken from said mine by said lessee shall be crushed and the mineral extracted therefrom in a proper manner, and at such intervals, in such quantities, as is usual in the working of mines of that character in that vicinity, and the said lessee shall preserve said mine, and all machinery, erections, and appliances erected thereon, free from incumbrances and liens, to the end that the same may be delivered, in the event of his failure to purchase the same, back to the said lessors at the expiration of this lease, free from any such liens or incumbrances; *and provided further,* that all expense incurred in procuring machinery, appliances, assistance, or otherwise in developing or working said mine, crushing the ore therefrom, and all other expenses, shall be borne by the said lessee, and he shall save the lessors harmless from all such expense, without charge therefor; *and provided further,* that said lessee shall and is hereby granted the right and privilege of applying all the proceeds and yield arising from the working of said mine, and extracting the metal therefrom, after deducting and paying such and bullion expenses for machinery and otherwise, to the payment of the purchase price of said mine to the said lessors.   And the said lessors hereby covenant and agree to accept and receive the same as such payment upon said purchase price; *and provided further,* that in the event of the failure of the said lessee to complete this contract or to fulfill his said contract of purchase on or before the time limited therefor, then, and in that event, all buildings, machinery,

and permanent appliances or improvements erected upon said mine by the said lessee in pursuance of these presents shall be forfeited to and become the property of and be surrendered to the said lessors as a part of said mine. And the said lessee, being the party of the second part herein named, with full knowledge of the terms and conditions of the foregoing instrument, both hereby promises, covenants, and agrees to conform to and abide by all of the terms, conditions, and contracts on his part herein required and set forth, and to that end doth hereby bind himself, his heirs and assigns, to keep and perform the same. In testimony whereof the respective parties hereto have hereunto set their hands and seals in duplicate this twelfth day of October, A. D. one thousand eight hundred and ninety-three."

The liens are claimed under section 1 of an act entitled "An act for securing liens for laborers on mining claims, and material men, and prescribing the manner of their enforcement," approved February twentieth, eighteen hundred and ninety-one, which provides, in effect, that every person who shall do work or furnish materials for the working or development of any mine, lode, mining claim, or deposit yielding metals or minerals of any kind, and all persons who shall do work or furnish material upon any shaft, tunnel, incline, adit, drift, or other excavation designed or used for the purpose of draining or working any such mine, lode, or deposit, shall have a lien upon the same; which lien shall attach to the mine, lode, etc.; "*provided,* that this section shall not be deemed to apply to the owner or owners of any mine, lode, deposit, shaft, tunnel, incline, adit, drift, or other excavations when the same shall be worked by a lessee or lessees." A demurrer to the complaint was sustained, and a judgment entered for the defendants, hence this appeal.

AFFIRMED.

For appellants there was an oral argument by *Mr. William Smith,* and a brief to this effect.

The instrument under which defendant Hardy obtained possession of the mine upon which liens are claimed and to foreclose which this suit was brought is not a lease, as the lower court held, but a license, and therefore does not exempt the mining claims from laborers' liens. It can be construed to be nothing else: *Moore* v. *Jackson,* 49 Cal. 109; *Eaman* v. *Bashford* (Ariz.), 37 Pac. 24; *Wheeler* v. *West,* 71 Cal. 126; *Doe on Demise of Hanley* v. *Wood,* 9 Morrison's Min. Rep. 189; *Boone* v. *Stover,* 66 Mo. 430; *Burnett* v. *Caldwell,* 76 U. S. (9 Wall.), 290, 293; *Potter* v. *Mercer,* 53 Cal. 667; *Watkins* v. *Holman,* 41 U. S. (16 Pet.) 54. The distinction between an irrevocable license and a demise must be borne in mind. The fact that a license is irrevocable does not create the relation of landlord and tenant between the parties to it. The permissive possession of a vendee before purchase is not a demise, but a bare license: *Doe* v. *Stanion,* 1 Mees. and W. 695; *Thompson* v. *Bower,* 60 Barb. 463; *Dunham* v. *Townsend,* 110 Mass. 440; Taylor on Landlord and Tenant (7th ed.), § 25; 1 Washburn on Real Property, 480.

To constitute a lease the possession of the tenant must be exclusive: *Thompson* v. *Mawhinney,* 17 Ala. 362, 367 (52 Am. Dec. 176); *Walls* v. *Preston,* 25 Cal. 54; *Heiskell* v. *Bushnell,* 37 Conn. 36, 45; *New York Motor Railroad Company* v. *Van Syckle,* 37 N. J. L. 497; *Williams* v. *Cleaver,* 4 Houst. 459; *Redfield* v. *The Utica and Syracuse Railroad Company,* 25 Barb. 64; *Stone* v. *Wait,* 50 Vt. 663.

For respondents there was a brief by *Messrs. Olmstead and Courtney,* and an oral argument by *Mr. M. L. Olmstead.*

Opinion by MR. JUSTICE WOLVERTON.

The vital question for our determination is whether O. B. Hardy, in the light of the foregoing contract, and within the spirit and purview of this act, was or was not a lessee when the work was performed for which these liens are claimed.    It is contended on the one hand that the contract or agreement is a lease, and upon the other that it is a mere license, and that the liens attach to the mines in the hands of the owners.    The distinction between a lease and a license is thus aptly stated by BEAN, C. J., in *Christensen* v. *Pacific Coast Borax Company,* 26 Or. 302 (38 Pac. 128): "A lease is a contract for the possession and profit of land by the lessee, and a recompense of rent or increase to the lessor, and is a grant of an estate in the land;  *   *   *   a license is an authority to do some act or series of acts on the land of another for the benefit of the licensee, without passing any estate in the land; and when the license is to mine upon the land of another, the right of property in the minerals when they are severed from the soil vests in the licensee."    This shows a clear and indubitable distinction between the two, and they are further distinguished in that the one is a corporeal and the other an incorporeal hereditament.    Licenses are, however, frequently granted with terms and conditions and upon considerations which ally them so closely to leases that it is difficult to determine when the border line has been transcended, and whether or not they are in reality leases instead of licenses.    A mere license, while it remains executory, is revocable at the pleasure of the licensor, is indivisible, and nonassignable.    But a license may confer either a sole or exclusive right, or simply a right in common.    And it has been said that if it simply confers a right to take ore or to work in a mine, it is not exclusive, and the licensor may himself take ore from the same land or mine, or license others to do so.    So a license to dig and carry away all the ore to

be found in certain lands does not confer an exclusive right. Such a grant shows the extent of the license, but not its exclusiveness. It is a license without stint as to quantity, and has been likened to the grant of a right *sans nombre,* which does not exclude the owner: *Grubb* v. *Bayard,* 2 Wall. Jr. 81 (S. C. 9 Morrison's Min. Rep. 199, Fed. Cas. 5849); *East Jersey Iron Company* v. *Wright,* 32 N. J. Eq. 248. It has also been held (*Caldwell* v. *Fulton,* 31 Pa. St. 475, 72 Am. Dec. 760,) that a grant of an exclusive right and privilege for a consideration presently paid to take ore, in that case "stone coal," without limitation, operates of a grant of ore in place, and not merely a license or incoporeal right; and so, in *Massot* v. *Moses,* 8 Morrison's Min. Rep. 607, it was held that a grant, upon sufficient consideration, of the exclusive right and privilege of working mines for minerals therein contained, for a term of years, operates as a demise of the minerals for the term.

Again, it is said (*Funk* v. *Haldeman,* 53 Pa. St. 229,) that a license coupled with an interest is a grant of an incorporeal hereditament, and that such a license is irrevocable, and also assignable. So a grant of the privilege of raising ore on the lands of the grantor at a certain price per ton is an incorporeal hereditament, irrevocable; but an agreement to lease land for a term of years with the exclusive right to bore for and collect oil, giving one fourth to the lessor, passes a corporeal interest: Blanchard and Weeks' Leading Cases on Mines, 486; *Chicago Oil and Mining Company* v. *United States Petroleum Company,* 57 Pa. St. 83. So we find here, from the illustrations which these cases afford, how closely a license may assimilate a lease, and whether it shall be called the one or the other often depends upon the nature of the consideration by which it is upheld and supported, and whether by its terms the grant is of an exclusive right or privilege.

That the consideration mentioned was single for the entire subject conveyed by the deed was a strong feature which inclined the court in *Caldwell* v. *Fulton,* 31 Pa. St. 475, (72 Am. Dec. 760,) to construe the deed as a grant of the minerals, and as evidencing an intention that the whole mineral contents of the mine should pass. So in *Massot* v. *Moses,* 8 Morrison's Min. Rep. 607, the fact that the consideration was a gross sum to be paid presently was a circumstance which entered into the consideration of the court, and by which the intent of the grantor was determined, and the instrument therein construed to be a lease instead of a license: *Gloninger* v. *Franklin Coal Company,* 55 Pa. St. 9 (93 Am. Dec. 720); *Groves* v. *Hodges,* 55 Pa. St. 504, and *Stockbridge Iron Company* v. *Hudson Iron Company,* 107 Mass. 290, are instances wherein the nonexclusiveness of the grants was the prevailing fact which impelled their construction as licenses, and not leases. Another test in the construction of an instrument or grant whether a license or a lease is whether the grantee has acquired any estate in the land in respect of which he may maintain ejectment: Bainbridge on Mines, 246, cited in *Funk* v. *Haldeman,* 53 Pa. St. 243; *Boone* v. *Stover,* 66 Mo. 434. But a license may amount to a lease if conferred in such a manner as to give it validity. Such is the case where an interest in the land is given, or where the license is for a definite period: Woods' Landlord and Tenant, § 227; *Branch* v. *Doane,* 17 Conn. 401.

In the light of these observations and authorities let us examine the agreement in question and determine its effect. The possession given thereunder is for a definite and fixed term, and the authority, right, and privilege conferred for working the mines and extracting ores therefrom is exclusive and irrevocable during the term, and manifestly Hardy could have maintained his possession under the agreement. It is stipulated in his behalf

that he will use and operate the mines in a proper and miner-like manner, doing no wilful or unnecessary injury to the same; that the ore raised shall be crushed and the mineral extracted therefrom in a proper manner, and at such intervals, and in such quantities, as is usual in the working of mines of like character in that vicinity; that he shall preserve all machinery and appliances erected thereon free from incumbrances and liens, to the end that the same may be delivered back to the owners unincumbered in the event of his failure to purchase at the expiration of the time agreed upon.    And it was further provided that all expenses incurred in procuring machinery, appliances, assistance, or otherwise in developing and working the mines should be borne by Hardy, and that he should save the owners harmless from all such expense.    Hardy is accorded the privilege of applying the net surplus arising from the operations of the mines to the payment of the twenty thousand dollars consideration as the purchase price thereof, but that, in the event of his failure to complete the purchase on or before the time limited, all buildings, machinery, and permanent appliances or improvements erected by him should be forfeited and become the property of the owners of the mines.    It is doubtful whether these stipulations contain any provisions for the payment of a rental, *reditus,* or for any increase to the mine owners, which is essential to a lease.    At least there are no positive undertakings on the part of Hardy to do anything that could be said to be beneficial to the mine owners, the doing or not doing of such acts being left optional with him.    Again, the absence of words of grant or demise from the agreement would indicate that it was the intention of the parties that the instrument should not operate as a lease.    But, whether technically construed as a lease or license, the mine owners parted with their entire su-

pervision and control of the mines for the stipulated time. Hardy was accorded the absolute control and management thereof, together with the possession and profits, under stipulation that they should be operated by him independently of the mine owners, and not as their agent. The mine owners were not to be responsible for any liabilities incurred; on the contrary, Hardy, by express agreement, was to bear all expenses, and to operate the mines entirely upon his own responsibility. They were to have no interest in the profits arising from working the mines, nor were they in any way to be benefited thereby, except as Hardy might have seen fit to have added to the value thereof by annexing thereto permanent improvements, which, by the terms of the agreement, were to remain and become the property of the mine owners in the event of Hardy's failure to fulfill his contract of purchase. Possession given under a bond for a deed and an agreement similar to this for the operation of a mine was held to be a lease in Montana, under a statute providing that "every person including guardians, minors, married women, and any company, association, or corporation, not tenants or lessees, for whose use, benefit, or enjoyment any building, structure, or improvement mentioned in section 1 of this act shall be constructed, repaired, or altered, shall be deemed the owner or proprietor thereof for the purposes of this act": *Block* v. *Murray,* 12 Mont. 545; see also *Pelton* v. *Minah Consolidated Mining Company,* 11 Mont. 281.

Our legislative assembly evidently intended that the property of the owner should be subject to a lien, so far as it could be justly permitted, to secure payment for labor or material furnished in the development or operation of a mine. But by the same act it is declared that the lien shall not be deemed to apply to the owner or

27 OR.—76.

owners when the mine shall be worked by a lessee or lessees. The spirit of the act would seem to imply that when the mine is worked by some person other than the owner, who himself has an interest independent of such owner, and absolutely independent of his supervision and control, and one under which possession can be supported and maintained in any event, as against the owner and all other persons, a lien claimed for work performed or materials furnished the person having such interest should not apply as against the owner or owners of the mine, and hence the lien claimed in the case at bar cannot affect the reversionary interest of the owners of these mines. It is not, however, to be understood that the granting of a mere license will exempt the owner or owners from the lien; but where, as in this case, the licensee has acquired a license which by its terms is made exclusive and irrevocable, and which, by reason of his expenditures in the development and improvement of the mines, has become a license coupled with an interest, under which possession may be maintained against the grantor and all other persons, such a license amounts to a lease within the spirit and purview of the statute. These considerations render it unnecessary to notice the other questions raised in the briefs and by the argument of respondents' counsel. The decree of the court below is affirmed, and the cause dismissed at the cost of appellant.

AFFIRMED.