### ALASKA HOMESTAKE MINING CO. v. KRAMPITZ.

(Circuit Court of Appeals, Ninth Circuit.   October 10, 1921.)

#### No. 3641.

Mines and minerals ⬦112(4)—Notice by lessor held sufficient to protect property from liens under Alaska statute.

Laws Alaska 1915, c. 13, defines a "mine" as including all claims of the same owner being worked together and all buildings, structures, and machinery which are fixtures thereon and used in connection with its working, and provides that all work done thereon at the instance of any person in privity with the owner shall be deemed to have been done at the instance of the owner, whose interest shall be subject to a lien therefor unless he shall give notice that he will not be responsible for the same by posting notices in writing on the mine, which, in case the mine is being operated by a lessee, shall refer to the recorded lease. It also

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

provides for a lien on a mill or machine for work done about the same unless a similar notice is posted "on such mill or machine." *Held* that, where a mine and the machinery and tools thereon and used in working the same are under one ownership, but are being operated and used by a lessee, notices posted on the mine by the owner, referring to the recorded lease, and stating that the owner would not be responsible for any work done on the claims or in aid of mining operations thereon, were sufficient to protect both the mine and all machinery and equipment thereon from liens for work done thereafter by employés of the lessee.

Appeal from the District Court of the United States for the Third Division of the Territory of Alaska; Fred M. Brown, Judge.

Suit in equity by the Alaska Homestake Mining Company against R. A. W. Krampitz. Decree for defendant, and complainant appeals. Reversed and remanded, with directions.

Upon a default judgment in favor of Krampitz for himself and certain other lien claimants to foreclose liens against certain property in the possession of the Free Gold Mining Company, the marshal sold certain property to Krampitz. Thereafter the Alaska Homestake Mining Company brought this suit against Krampitz to set aside the decree in the foreclosure suit referred to in so far as the same affected the property rights of the Alaska Homestake Company. The court set aside the judgment and after trial dismissed the complaint in the present suit. The mining company appeals.

Appellant, as owner of the Camp Bird No. 1 and Camp Bird No. 2, leased the claims together with "all improvements, machinery, tools, buildings and equipment upon or near said mining claim and used or to be used in connection with the working or development of the same, * * * including a certain quantity of tools and equipment in Valdez, Alaska, the same to be taken to said mining claims by the parties of the second part." The lessees were Whalen and Quitsch. Under the terms of the lease, all improvements, machinery, tools, and equipment placed on the property by the parties of the second part during the time of the running of the lease at the expiration of the term were to be the property of the party of the first part, not to be removed from the property by the parties of the second part, and in case of expiration of the lease prior to October 25, 1922, by reason of a violation of the terms, then all the improvements and tools and other equipment should be the property of the mining company. The lessees also agreed to have a compressor on the claims and to put a mill thereon. The conditions of the lease were made binding upon the assigns of all the parties.

The original lessees, after operating for a time, on June 3, 1918, assigned the lease and all their rights thereunder to the Free Gold Mining Company, which went into possession and operated the mines until 1920. In June, 1919, the Homestake Mining Company posted on the ground notices reciting that it was the owner of the Camp Bird No. 1 and Camp Bird No. 2 mining claims leased to Whalen and Quitsch by lease then of record; that the lease was assigned to the Free Gold Mining Company by assignment of record; "that all work being done on said mining claim or to aid in their development or operations is done under and by virtue of said lease by the lessee or their assigns, and said Alaska Homestake Mining Company will not be responsible for any wages of employés engaged in any kind of work upon said claims or in aid of mining operations thereon."

The District Court found that about January, 1920, the lessees and their assigns failed for more than 30 days thereafter to keep at least six men at work upon the mine and failed to keep the premises free of labor liens as required by the provisions of the lease; and that upon January 10, 1920, Krampitz and five others filed claims of lien upon certain machinery, tools, and other equipment on the premises and upon certain gold amalgam taken from the mines, all the claims of lien being for wages for labor performed subsequent to the posting of the notice referred to.

The court also found that the property sold by the marshal consisted of cer-

tain mills, engines, beltings, and cars and tools, but that no part of the property sold was affixed to the ground so as to be included within the terms "mine" or "mining claim" as defined in chapter 13 of the Session Laws of Alaska of 1915; that all the property, except some gold retort, was within the definition of "mill" or "machine" as defined in the laws of Alaska; that the gold retort was within the class of property defined as "dump or mass of mineral bearing sand, earth or rock," etc.; that the notice was not posted upon any of the personal property particularly described in the findings; and that the liens and equities of the defendant were superior to any right or claim of the mining company.

L. L. James, Jr., of San Francisco, Cal., John Lyons, of Seattle, Wash., and E. E. Ritchie, of Valdez, Alaska, for appellant.

J. L. Reed, of Valdez, Alaska, for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] The principal question involves the legal effect of the notice posted by the mining company notifying all persons interested that it would not be liable for wages of employés of the lessee. The statute under which the lien is claimed provides (section 2) that when two or more claims are contiguous and owned or claimed by the same person and are worked through a common shaft or at one mill, then all mining claims, lodes, or deposits so owned and worked, and all roads, flumes, pipe lines, "buildings, structures, superstructures and machinery which is a fixture thereto thereon and used in connection with the working thereof," shall be considered one mine.

Section 5 provides that all work done on or upon a mining claim at the instance of any person in privity with or having the right of possession or privilege of working or mining thereon from the owner or his authorized agent, in developing, mining, or doing other class of work in mining such mining claim, or the separation or reduction to a commercial value of the minerals therein or extracted therefrom, shall be deemed to have been done at the instance of the owner, and the owner's interest shall be subject to any lien filed in accordance with the provisions of the act, unless such owner shall, within ten days after he shall have obtained knowledge of such work or labor being performed, give notice that he will not be responsible for the same, by posting notice in writing to that effect in three conspicuous places on such mine or mining claim; and should said mine or mining claim be worked or mined by a lessee under a written lease or lay or under a bond or contract of sale from the owner or executed by his authority, such lease, bond, or contract must be recorded in the precinct records of the precinct wherein the mine or mining claim is situate, and the notice of nonliability aforesaid shall refer to the record of such recorded instrument.

It is also provided that all work done about a mill or machine used in mining, and on account of which the same is subject to a lien under the act at the instance of any person having the right of possession or right of use from the owner, shall be deemed to have been done at the instance of the owner of the mill or machine, and the owner's interest is made subject to the lien unless the owner within ten days

after he shall have obtained knowledge of such use, give notice of his interest therein, and that he will not be responsible for the labor involved in such use, by posting a notice in writing to that effect in a conspicuous place on such mill or machine, etc.

The provisions cited make it plain that for the purposes of the lien law, when mining property is held under one ownership, the claim and all improvements and fixtures used in connection with the working of the mine shall constitute one mine. They make it equally clear that while there shall be a lien for work done upon a mining claim at the instance of any person in privity with or having the right of possession or privilege of working from the owner, and that the owner's interest shall be subject to a lien, nevertheless the owner may exclude his interest from the operation of the statute by giving and posting the notices in writing to the effect prescribed. We cannot sustain the view of the District Court that the notice only protected the mining claims as distinguished from the improvements and fixtures upon the claim.

Section 3 of the statute provides that while the liens shall not be deemed one exclusive of the other, but shall attach, "and may be claimed for the same labor" upon the mine or mining claim, and the dredge and mill or machinery, and the dump, should the facts relative to the labor warrant the same; "and it shall be optional with the lienor to claim a lien on one or all the different classes of property subject to his lien for the same labor." It is also provided should "one class or kind of property" be insufficient security therefor, then any other class or kind which may be lienable under the act, may be concurrently concomitantly claimed and subjected thereto."

There appear to be three classes of property upon which liens may be claimed: (1) The mining claim; (2) the machinery, mill, dredge, and like property; (3) the gravel, ore, rock, minerals, gold dust, and gold. Claim of lien may be made for the same labor on any one or all classes, but there must be a claim upon the class to be subjected before the lien can attach.

Section 6 of the act tends to confirm this view. By its provision with respect to the procedure to be followed, if the employment has been continuous under one contract, "the lien claimant may in one lien notice claim his lien against more than one of the different classes of property mentioned in section 1 of this act, provided the amount claimed against each separate class of property be specified, the property sought to be charged be identified sufficiently, and the name of the owner or reputed owner thereof be stated."

Again, in section 10, it is provided that any number of persons claiming may join, and should a lien claim be filed for the same labor against two separate kinds of property claimed or owned by different persons, the court may adjudge the liability of each kind of property and designate which should be sold first to discharge the amount of the lien claimed. Also, section 11 makes a substantial compliance in matters of procedure and contents of lien notice sufficient, provided that such notice shall satisfactorily show the "property sought to be charged with the lien sufficient for identification." In section 13 there is a provision

to the effect that whenever the phrase "different classes or kinds of property" subject to lien is used in the act, "the same shall refer to mines and mining claims as hereinbefore designated as one class; dredges, steam shovels, mills and machines as another class; and dump or mass of mineral bearing sands, earth, ore, rock, etc., as a third class."

In the present case the liens were filed upon certain machinery, tools, and other equipment on the premises belonging to plaintiff and upon certain gold amalgam taken from the mine. But the notice posted by the Homestake Company owner advised all that the work being done was under the lease already referred to, and that that company would not be responsible "for any wages of employés engaged in any kind of work upon said claims or in aid of mining operations thereon." This was enough, we think, to advise all that the mining company would not be responsible for work done upon the claim whether in mining, or upon machinery upon the mine, or in extracting ore and reducing the same to commercial value. Stinson v. Hardy, 27 Or. 584, 41 Pac. 116; Washburn v. Inter-Mountain Mining Co., 56 Or. 578, 109 Pac. 382, Ann. Cas. 1912C, 357. No liberality of construction which should prevail when a lien has once attached can extend a lien to the owner's interest where the statute says it shall not apply, if the owner gives notice to the effect prescribed. Any one reading the notice hereinbefore set forth could not have been misled, for the one and only meaning thereof was to announce that the company would not be responsible for the wages of men engaged in "any kind of work upon the claims" or "in aid of mining operations thereon."

Assuming that the machinery was personalty, it could not be reasonably held that it was necessary to post the notices upon each separate piece of personal property upon the claims. One of the notices was conspicuously placed upon a building in which part of the machinery was placed. All referred to the record which enabled one to learn the full contents of the lease; substantial compliance was had.

The lower court held that a certain quantity of gold retort which was sold as personal property was within the statute defining dump or mass of mineral bearing sands, ore, rock, etc. The retort was claimed by the mining company as royalty under the lease which provided that the lessees were to operate the mines and to pay a royalty of 12½ per cent. gross on all mineral production, and that all output was to be delivered to the Bank of Valdez, which was to have the ore reduced, and when the proceeds were received was immediately to credit 87½ per cent. to the credit of the lessees and 12½ per cent. to the credit of the lessors. But as the rights of the parties are to be ascertained by the effect of the notices posted, it would seem that the bank became merely a trustee for the parties separately when the gold was deposited, and there was not the relationship of debtor and creditor between lessor and lessee.

At the time of the institution of the lien foreclosure suit and when the judgment therein was rendered and the sale of property was made, the Alaska Homestake Mining Company, admitted to be a foreign corporation, had not complied with the laws of Alaska governing for-

cign corporations doing business within that territory. On the other hand, it is of record that the mining company did comply with such laws prior to bringing the suit now under consideration. Nevertheless, the appellee herein contends that the mining company was barred from bringing it, and that contracts with citizens of Alaska were void under the provisions of the Alaska Code of 1913, § 660.

Under the authority of Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137, the company was not engaged in doing business. It was involved in merely a single transaction.

The judgment is reversed, and the cause is remanded, with directions to enter a decree in favor of the Alaska Homestake Mining Company.

Reversed.